## Forbearance and Loan Modification Agreement

This Forbearance and Loan Modification Agreement (hereinafter the "**Agreement**") is made by and between **Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Owner Trustee of the Aspen Growth IV Trust, a Delaware statutory trust**, whose address is 1221 W. 103rd St #108, Kansas City, MO. 64114 (hereinafter the "**Lender**"), and **Jose Gosdenovich, whose address is 123 Clifton Place, Jersey City, NJ 07304** (hereinafter the "**Borrower**"), and **Marisol Gosdenovich** (hereinafter the "**Owner**") (collectively, the "**Parties**") this 5th day of July, 2021.

**WHEREAS**, on April 12, 2007, the Borrower executed a certain Promissory Note agreement in the original amount of One Hundred Thirty One Thousand Two Hundred Fifty Dollars and No Cents (**$131,250.00**), payable to PNC Bank, National Association (hereinafter the "**Note**"); and

**WHEREAS**, in order to secure repayment of the Note, on April 12, 2007, **Jose Gosdenovich and Marisol Gosdenovich** executed a certain Mortgage, in the original amount of One Hundred Thirty One Thousand Two Hundred Fifty Dollars and No Cents (**$131,250.00**), in favor of PNC Bank, National Association, and recorded on April 24, 2007, as instrument Book/Volume: 15770, Page: 00153 in the office of the Recorder of County of Hudson, State of New Jersey (hereinafter the "**Security Instrument**"). The property encumbered by the aforementioned Security Instrument, for loan number ▮▮▮▮1032 (hereinafter the "**Loan**") is described in Exhibit A, and is commonly known as 123 Clifton Place, Jersey City, NJ 07304 (hereinafter the "**Subject Property**"); and

**WHEREAS**, The Note, the Security Instrument, this Agreement and other documents and writings executed and delivered by the Borrower and the Owner in connection with the Loan are hereinafter collectively referred to as the "**Loan Documents**"; and

**WHEREAS**, The Borrower and the Owner acknowledge that Lender is the legal holder and owner, or agent/servicer for the legal holder and owner, of the Note and Security Instrument and further acknowledges that if Lender transfers the Note and the Security Instrument as amended by this Agreement, the transferee shall be the Lender as defined in this Agreement; and

**WHEREAS**, on February 16, 2021, the Borrower filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code with the United States Bankruptcy Court for the District of New Jersey as Case No. **21-11230-VFP** (the "**Bankruptcy Case**"); and

**WHEREAS**, on March 18, 2021, the Lender filed a Proof of Claim as Claim #5 in the Bankruptcy Case (the "**Lender's Proof of Claim #5**"); and

**WHEREAS**, on March 15, 2021, the Borrower filed a Notice of Request for Loss Mitigation – By the Debtor. On April 19, 2021, the Notice of Request for Loss Mitigation was granted by the court; and

**WHEREAS**, The Borrower has defaulted on the obligations under the Note, including, but not limited to, failing to make the April 28, 2012 through and including the April 28, 2021 payment on the Note; and

**WHEREAS**, The Borrower's default creates a default under the terms and provisions of the Security Instrument; and

**WHEREAS**, on October 2, 2019, the Lender issued a Notice of Intention to Foreclose Pursuant to N.J.S.A. 2A:50-56, and made demand for the total past due amount representing all past due payments thereon not previously paid, and all fees and costs due thereon totaling One Hundred Three Thousand One

_JG_   _MG_                Page 1 of 14                                          _JR_
Borrower Initial(s)                                                        Lender Initial

Hundred Sixty Eight Dollars and Eighty Eight Cents (**$103,168.88**) is payable in full, and Lender is entitled to assert and enforce all of its various rights and remedies against the Borrower's and the Owner's respective assets under the Loan Documents; and

**WHEREAS**, The Parties agree that as of May 24, 2021 the principal amount due and owing on the Note, is One Hundred Twenty Eight Thousand Five Hundred Four Dollars and Sixty Eight Cents (**$128,504.68**) (hereinafter the "**Principal Balance**"); and

**WHEREAS**, The Borrower and the Owner desire to prevent foreclosure proceedings under the terms of the Security Instrument; and

**WHEREAS**, The Lender desires to conditionally forbear from exercising its legal and equitable remedies under the Loan Documents against the Borrower and the Owner, upon such terms and conditions as are hereinafter set forth; and

**WHEREAS**, The Borrower and the Owner desire to unconditionally release, remise, and discharge the Lender and any and all subsidiaries, affiliates, successors or assigns of Lender and their Officers, Directors, employees, agents and attorneys, of and from any and all past and present claims and causes of action which relate to, or are in any way connected with the Loan or the acts or omissions of any related Parties; and

**IT IS NOW THEREFORE**, agreed that in consideration of the Lender's agreement to forbear and other good and valuable consideration, acknowledged by the Parties herein, and intending to be legally bound, the Parties agree as follows:

1. **Recitals:** The recitals set forth above are true and accurate in every respect and are hereby incorporated into this Agreement by this reference.

2. **Past Due Amount:** The Lender, Borrower and Owner agree the total Interest and Fees past due (hereinafter the "**Past Due Amount**") through **May 19, 2021** due and payable is as follows:

| | |
|---|---:|
| Interest (March 28, 2012– May 19, 2021) | $104,330.40 |
| Late Fees | $4,642.24 |
| Legal Fees | $1,517.24 |
| **Total Past Due Amount @ May 19, 2021** | **$110,489.88** |
| #3. **Good Faith Payment** | ($55,000.00) |
| #4. **Trial Payment Plan** | ($4,920.00) |
| #5. **Net Past Due Amount** | $50,569.88 |

3. **Good Faith Payment:** The Borrower has agreed to pay to the Lender in certified funds or Bank Official Check (**Payable to FCI Lender Services**) in the amount of Fifty Five Thousand Dollars and No Cents (**$55,000.00**) (hereinafter the "**Good Faith Payment**") due on or before **Thursday, June 03, 2021**. The Good Faith Payment will be applied as a credit and reduction of the past due Interest (**$55,000.00**) as identified in #2 **Past Due Amount**.

Borrower Initial(s)    Lender Initial

4. **Trial Payment Plan:** (hereinafter the "**Trial Payment Plan**") the Lender and the Borrower have agreed to the following Trial Payment Plan:

   | | |
   |---|---|
   | **Trial Payment #1 - Due July 20, 2021** | ($1,640.00) |
   | **Trial Payment #2 - Due August 20, 2021** | ($1,640.00) |
   | **Trial Payment #3 - Due September 20, 2021** | ($1,640.00) |
   | **Total Trial Plan** | ($4,920.00) |

   The Trial Payments will be applied to past due Interest ($4,920.00) as identified in #2 **Past Due Amount.** The Lender and the Borrower further agree the **Trial Payment Plan** is a contingency and a condition to the effectiveness of this Agreement. Upon completion of the **Trial Payment Plan** without default, the modified terms as documented herein will be immediately effective and fully accepted.

5. **Net Past Due Amount - Added to Principal Balance:** The Lender and the Borrower agree that the remaining Net Past Due Amount (hereinafter the **"Net Past Due Amount"**) representing past due Legal Costs (**$1,517.24**), past due Late Fees (**$4,642.24**), and past due Interest (**$44,410.40**) and totaling Fifty Thousand Five Hundred Sixty Nine Dollars and Eighty Eight Cents (**$50,569.88**), will be added to the Principal Balance for a new Modified Principal Balance totaling One Hundred Seventy Nine Thousand Seventy Four Dollars and Fifty Six Cents (**$179,074.56**) (hereinafter the **"Modified Principal Balance"**) as documented below:

   | | |
   |---|---|
   | Principal Balance | $128,504.68 |
   | **#5 Net Past Due Amount** | $50,569.88 |
   | **Modified Principal Balance** | $179,074.56 |

   The Borrower understands that by agreeing to add the Net Past Due Amount to the outstanding Principal Balance, the added unpaid amounts accrue interest based on the interest rate in effect under this agreement. The Borrower also understands this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

6. **Discounted Payoff:** The Lender has agreed to offer the Borrower a discounted payoff totaling Two Hundred Twenty Seven Thousand Forty Four Dollars and Eighty Three Cents (**$227,044.83**) (the "**Discounted Payoff**") due on or before **Thursday, June 03, 2021**. The Lender has further agreed, contingent upon the execution of a loan modification with monthly payments as identified herein, to reduce the Discounted Payoff by the amount of the Good Faith Payment paid not to exceed Fifty Five Thousand Dollars and No Cents (**$55,000.00**), and extending the Discounted Payoff option through **Wednesday, October 20, 2021**.

   The Discounted Payoff is contingent upon the loan being paid current without default in accordance with the terms of the Agreement.

   This Discounted Payoff offer is null and void after **Wednesday, October 20, 2021**.

7. **Condition to Effectiveness of Agreement:** As a condition to the effectiveness of this Agreement, the Borrower and the Owner shall:

Borrower Initial(s)    Page 3 of 14    Lender Initial

(a) pay the Lender the **#3. Good Faith Payment** totaling Fifty Five Thousand Dollars and No Cents (**$55,000.00**), **Payable to FCI Lender Services** as outlined above, and promptly mailed to:

> **FCI Lender Services**
> **Attn: Loan Servicing Dept.**
> **P. O. Box 27370**
> **Anaheim Hills, CA 92809-0112**

(b) make the payments in accordance with **#4. Trial Payment Plan** without default.

(c) sign, date, have notarized and return to the Lender a scanned copy of this Agreement on or before **Thursday, June 03, 2021.** The Borrower may scan and email the **signed and notarized copy** to agmanagers@aspenfunds.net.

(d) return the original fully executed Agreement to the Lender on or before **Tuesday, June 08, 2021.**

The original fully executed Agreement shall be mailed to:

> **Aspen Properties Group, LLC**
> **5700 W. 112th Street, Ste. 110**
> **Overland Park, KS 66211**

In the event the Lender does not receive the Good Faith payment as defined in **#3. Good Faith Payment,** and a scanned copy of the fully executed Agreement on or before **Thursday, June 03, 2021, and the original fully executed Agreement on or before Tuesday, June 08, 2021, this Agreement will become null and void.**

8. **Collection Efforts to Continue:** This Agreement shall be of no force or effect, and no action will be taken by the Lender to cease collection activities, unless and until the terms as outlined in **#7. Condition to Effectiveness of Agreement** is satisfied as documented above.

9. **Modification:** The Lender, the Borrower and the Owner have agreed to modify the Loan and the Loan Documents as follows:

   (a) *Modified Principal Balance:* The **Modified Principal Balance** of the Loan as of the date of this Agreement is One Hundred Seventy Nine Thousand Seventy Four Dollars and Fifty Six Cents (**$179,074.56**). See **#5. Net Past Due Amount - Added to Principal Balance** for detail calculation.

   (b) *Balloon Maturity Date:* Unless otherwise due under the terms hereof in the event of a default or by acceleration provided for pursuant to the Loan Documents, the Loan shall mature and all principal, plus accrued unpaid interest as aforesaid, and any additional charges shall be payable and due on the Maturity Date **September 20, 2031** (hereinafter the "**Balloon Maturity Date**") from the Borrower.

   It is the intention of the Parties that all liens and security interests described in the Security Instrument are hereby renewed and extended (if the Maturity Date of the original Note has been changed) until the indebtedness evidenced by the Note and this Agreement has been fully paid. Lender, Borrower, and Owner acknowledge and agree that such renewal, amendment,

Borrower Initial(s)     Lender Initial

modification, rearrangement or extension (if applicable) shall in no manner effect or impair the Note or liens and security interests securing same, the purpose of this Agreement being simply to modify, amend, rearrange or extend (if applicable) the time and the manner of payment of the Note and the indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note, which are expressly acknowledged by Borrower and Owner to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note.

(c) **Loan Interest Rate**: Interest will be charged on the **Modified Principal Balance** until the full amount of the loan has been paid. The Borrower will pay a fixed rate of interest at a yearly rate of **9.25%** effective **September 20, 2021** and through the term of the loan

(d) **Monthly P&I Payments**: The Modified Principal Balance will be re-amortized over a new Twenty (20) year amortization period with a **9.25%** fixed interest rate and the Loan will be repaid in monthly payments of principal and interest. The new and modified calculated principal and interest monthly payment of One Thousand Six Hundred Forty Dollars and Eight Cents (**$1,640.08**) (hereinafter the "**P&I Payment**") will be paid by the Borrower to the Lender commencing on **October 20, 2021** and continuing on the same calendar day of each month thereafter through the Balloon Maturity Date.

All monthly payments will be made payable to FCI Lender Services and promptly mailed to:

> **FCI Lender Services**
> **Attn: Loan Servicing Dept.**
> **P. O. Box 27370**
> **Anaheim Hills, CA 92809-0112**

(e) **Balloon Payment**: The Borrower acknowledges that the new amortization period of Twenty (20) years was used to calculate the new and modified P&I Payment resulted in a lower and more affordable P&I Payment to the Borrower. The Borrower further acknowledges <u>**the new 20 year amortization period is greater than the Ten (10) year loan term with a Maturity Date of September 20, 2031**</u>; and will result in an unpaid principal, interest, and fee balance at the time of the Maturity Date. The Borrower agrees that all unpaid principal, interest, and fees at the time of the Maturity Date will be due and payable in full, (the "**Balloon Payment**").

10. <u>**Confirmation; No Novation.**</u> **Except to the extent of a discharge in a Bankruptcy Case**:

   (a) The Borrower and the Owner ratify and confirm all of their liabilities and obligations under the Loan Documents and agrees that, except as expressly modified in this Agreement, the Loan Documents continue in full force and effect as though set forth specifically herein.

   (b) The Borrower, the Owner, and the Lender agree that this Agreement shall not be construed as an agreement to extinguish the original obligations of the Borrower and/or the Owner under the Loan and the Loan Documents and shall not constitute, and is not intended to be, a novation as to or of the obligations of the Borrower and/or the Owner under the Loan and the Loan Documents, and that it shall constitute a continuation of the transaction evidenced by the Loan Documents.

   (c) All provisions of the Loan Documents modified by **Section #9. Modification** and/or inconsistent with the further provisions of this Agreement are hereby modified as set forth herein. All other terms and provisions of the Loan Documents shall continue unmodified and in full force and effect. Except where otherwise specifically provided in this Agreement, the

Note and the Security Instrument will remain unchanged, and the Borrower, the Owner, and the Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement. Nothing contained in this Agreement shall be deemed to affect the validity or priority of any of the Loan Documents or the Lender's lien thereunder or to limit any rights of the Lender under the Loan Documents, except as specifically set forth herein.

11. **Default:** Failure to make any payment within sixty (60) days of the due date in accordance with this Agreement will constitute an event of default. In the event of a default under the Loan Documents or this Agreement, the Lender, in addition to any other rights and remedies it may have under the Loan Documents or this Agreement and all applicable laws, may at its option, revoke any and all modifications and concessions contained in this Agreement retroactive to the date of this Agreement, including, but not limited to, **the Modified Interest Rate, Modified Principal Balance, Discounted Payoff, modified P&I Payment, and the extended Maturity Date,** will return, at the Lender's option, to the original terms of the Loan Documents executed at settlement. The Lender will have the right to collect any and all unpaid interest or fees calculated from the date of the Loan Documents executed at settlement. All amounts past due will be due and payable upon default. Lender may require immediate payment in full of all sums secured by the Mortgage.

If Lender exercises the option to require immediate payment in full of all sums secured by the Mortgage, Lender shall give Borrower and Mortgagor notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which Borrower and Mortgagor must pay all sums secured by the Security Instrument. If Borrower and Mortgagor fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand to Borrower and Mortgagor.

12. **Protection of Lender's Rights in the Property:** If the Borrower and the Owner fail to perform the covenants and agreements contained in the Loan Documents, or there is a legal proceeding that may significantly affect Lender's rights in the Subject Property (such as proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Subject Property and Lender's rights in the Subject Property. Lender's actions may include paying sums secured by a lien which has priority over the Lender's lien, appearing in court, paying reasonable attorney's fees, and entering on the Subject Property to make repairs. Although Lender may take action under this Paragraph 12, Lender does not have to do so.

Any amounts disbursed by Lender under this Paragraph 12 shall become additional debt of the Borrower secured by the loan Documents unless the Borrower and the Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note Rate and shall be payable, with interest, upon notice from the Lender to the Borrower requesting payment.

13. **Financial Information:** During the pendency of this Agreement, the Borrower shall provide the Lender with all financial information, within thirty (30) days, which the Lender may request in writing from time to time with respect to the Borrower in a form that is acceptable to the Lender and containing such information and detail as the Lender may require to ensure that its lien on the real estate hereunder remains unimpaired.

14. **Borrower's Authorization:** Borrower and Owner agree to sign and complete the attached Borrower's Authorization form thus authorizing the Borrower's and Owner's 1st Mortgage Lender/Servicer to discuss the Borrower's and/or Owner's loan and loan status with Aspen

Borrower Initial(s)    Lender Initial

Properties Group, LLC, or assignees. Borrower and Owner further agree to renew or re-sign the Borrower's Authorization form on an as needed basis.

15. **Representations and Warranties:** The Borrower and the Owner represent and warrant to the Lender as follows:

    (a) To the best of their knowledge, all information, documents, reports, statements, financial statements and data submitted by or on behalf of the Borrower and the Owner in connection with this Agreement, are true, accurate and complete in all respects as of the date made and contain no knowingly false, incomplete or misleading statements; and

    (b) To the best of their knowledge, the making and performance of this Agreement will not immediately, or with the passage of time, the giving of notice or both: (i) violate any laws or result in a default under any contract, agreement, or instrument which the Borrower and the Owner are a party or by which the Subject Property is bound or (ii) result in the creation or imposition of any security interest in, or lien or encumbrance upon the Subject Property, except in favor of the Lender or as otherwise provided herein; and

    (c) This Agreement executed by the Borrower and the Owner is a valid and binding obligation, fully enforceable against the Subject Property in accordance with its terms; and

    (d) There is no action suit or proceeding pending or, to the best of their knowledge, threatened against the Borrower and/or the Owner, except for actions which have or will be taken by the creditors disclosed to the Lender.

16. **Additional Events of Default:** Each of the following shall constitute an Event of Default under this Agreement:

    (a) The failure of the Borrower to make, in a full and timely manner, any of the payments required hereunder; and

    (b) The failure of the Borrower and/or the Owner to pay the required property taxes and homeowner's insurance premium and provide the Lender written proof through a paid receipt of such property taxes and homeowner's insurance premium when requested by the Lender; and

    (c) The failure of the Borrower and/or the Owner to do anything required under this Agreement and/or the Loan Documents; and

    (d) Any action by the Borrower and/or the Owner that is prohibited by this Agreement and/or the Loan Documents; and

    (e) Any violation or breach by the Borrower and/or the Owner of any representation, covenant, warranty, or obligation contained in this Agreement and/or in any of the Loan Documents; and

    (f) The Borrower and/or the Owner providing the Lender with any information that is not true, accurate and complete to the best of the Borrower's and/or the Owner's knowledge, information, and belief; and

    (g) The occurrence of and event of default under the Loan Documents other than the current defaults; and

Page 7 of 14

Borrower Initial(s)                                                                                    Lender Initial

(h) The recordation of any Federal, State, or local tax lien against the Subject Property that is not discharged or satisfied within thirty (30) days of written demand to so by the Lender.

17. **Willingly:** The Parties have entered into this Agreement willingly.

18. **Execution of Agreement:** This Agreement may be executed in counterparts and multiple originals. Each original fully executed Agreement shall be deemed to be an original for any purpose. Moreover, any combination of counter signatures including the signatures of all the Parties shall be deemed to constitute a complete and original Agreement for all purposes. Signatures may be exchanged by facsimile or email, and each of the Parties to this Agreement expressly agrees to accept the signature of the other Party to this Agreement by facsimile or email.

    All persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower/owner is deceased; (ii) the borrower and co-borrower/owner are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

19. **Tense, Gender, Captions.** As used herein, the plural includes the singular, and the singular includes the plural. The use of any gender applies to any other gender. If more than one person has executed this Agreement, the terms "Borrower" and "Owner" mean all such persons collectively or any one or more of such persons individually or collectively, as the case may be and as the context may require. All captions are for the purpose of convenience only.

20. **Confidentiality:** This Agreement is Confidential, except as necessary for the enforcement of same.

21. **Choice of Law:** This Agreement shall be construed, interpreted, and administered in accordance with the laws of the State of New Jersey.

22. **Assignment of Rents:** Borrower and Owner hereby agree that in the event of the Borrower's and the Owner's default which is designated, but not limited to Paragraph 16 of this Agreement, to the assignment of any and all rent collected and thereafter to be forever assigned, transferred, or designated to Lender or Lender's agents, employees, assigns, heirs or otherwise if the Borrower and the Owner rent out said premises at any time after Borrower and Owner are in default of said terms of this Agreement. Upon default, Lender shall provide Borrower and Owner with written Demand for assignment of payment of rent to Lender. Borrower and Owner further agree to turn over any and all rent in possession at the time of written demand or collected thereafter less payments of any expenses authorized by Lender in writing if applicable. Lender shall hold a lien on any and all rent owed to the Borrower and the Owner or collected by the Borrower and the Owner upon the Borrower's and the Owner's default. Upon Default, Borrower and Owner further agree to provide Lender with an accounting of any and all rent paid, owed, and any and all amounts due in the future. Borrower and Owner also agree to the assignment and release of any and all rights pertaining to the rent collected, advanced or owed in the present and future to the Lender or Lender's agents, employees, assigns, heirs or otherwise upon the Borrower's and the Owner's default. In the event of foreclosure, the Borrower and the Owner further agree to relinquish any and all rent collected or owed thereafter to Lender or Lender's agents, employees, assigns, heirs, or otherwise without the necessity of court intervention upon reasonable notice as designated above.

23. **Breach:** In the event this Agreement is breached, the Lender reserves the exclusive right to accept or reject, within its sole discretion, a tendered cure of said breach without prejudice of its rights.

Page 8 of 14

Borrower Initial(s)    Lender Initial

24. **Binding Effect:** This Agreement shall be binding upon and shall inure to the benefits of the Parties hereto, and their respective successors and assigns. The recitals set forth at the beginning of this Agreement are incorporated herein by this reference.

25. **Severability:** In case one or more provisions contained in this Agreement shall be determined to be invalid, illegal, or unenforceable in any respect under any law, the validity, legality, or enforceability of the remainder of the provisions set forth herein shall remain effective and binding and shall not be affected or otherwise impaired thereby.

26. **Payments:** The Parties agree that each and every payment made pursuant to this Agreement shall be applied as set forth above and not returned to Borrower in the event of a breach.

27. **Purpose:** Borrower and Owner expressly and voluntarily admit that this Agreement is entered into for the purposes of forbearing the foreclosure action against them on the valid Note and Security Instrument in which they voluntarily entered into as referenced above. Nothing in this Agreement shall constitute a waiver of the Lender's right to enforce the Note and Security Instrument in the event of a default.

28. **Time is of the Essence:** The Parties agree TIME IS OF THE ESSENCE.

29. **THE BORROWER AND OWNER WARRANT TO THE LENDER THAT THEY (A) HAVE READ EACH AND EVERY PROVISION OF THIS AGREEMENT, (B) HAVE CONSULTED, OR HAVE BEEN GIVEN AN OPPORTUNITY TO HAVE THIS INSTRUMENT REVIEWED BY COMPETENT LEGAL COUNSEL OF HIS CHOOSING AND (C) UNDERSTAND, AGREE TO AND ACCEPT THE PROVISIONS HEREOF.**

30. **Agreement:** This Agreement constitutes the only agreement between the Parties concerning this forbearance, and all agreements entered prior thereto regarding the forbearance, if any, either written or oral, shall be deemed null and void and of no further effect.

31. **Usury Savings Clause:** No provisions of this Agreement or the Loan Documents will require the payment of or permit the collection, application, or receipt of interest in excess of the maximum permitted by applicable state or federal law. If any interest in excess of the maximum permitted by applicable law is provided for by this Agreement or the Loan Documents, or will be adjudicated to be so provided for, the provision of this paragraph will govern, and neither Borrower nor any endorsers of the Note will be obligated to pay such interest to the extent it is in excess of the maximum permitted by applicable law. It is expressly stipulated that the intent of the Borrower, the Owner, and the Lender is to comply with the usury and other laws relating to the Loan Documents at all times. If Lender or other holder of the Note ever receives, collects, or applies as interest any such excess, the excess interest will be applied to reduce the unpaid principal balance of the Note. If such application pays in full the principal balance of the Note, any remaining excess will be paid to Borrower and Owner, and the provisions of the Loan Documents will immediately be deemed reformed and the amounts thereafter collectively reduced, without the necessity of executing any new document, so as to comply with the applicable law while permitting the fullest recovery of the amounts called for by this Agreement and the Loan Documents. In determining if the interest is paid or payable under any specific contingency exceeds the maximum allowed by applicable law, the Borrower, the Owner, and Lender or other holder of the Note will, to the extent permitted by applicable law, amortize, prorate, allocate, and spread the total amount of interest throughout the entire term of the Note to the greatest extent possible less than the maximum amount or rate of interest allowed by applicable law during the relevant period. Notwithstanding the

Borrower Initial(s)    Page 9 of 14    Lender Initial

foregoing, if at any time the law is changed so as to permit the charging of a higher amount or rate of interest than was permitted before the law changed, then to the extent permitted by law, references in the Loan Documents to "applicable law" for purposes of determining the maximum amount or rate of interest that can be charged will refer to the law as amended to allow the greater amount or rate of interest.

32. **Release and Waiver of Usury Claims:** In consideration of the Lender's modification of the terms of the Loan Documents, the settlement of the matters disputed by Borrower and Owner, and the other benefits received by the Borrower and the Owner, Borrower and Owner waive, release, and terminate all claims or rights to claim that Lender or any other party charged, collected, or received usurious interest under the Loan Documents but only to the extent permitted by applicable law.

33. **General Release:**

    (a) In consideration of, among other things, the forbearance and modification agreement provided for herein, the Borrower and the Owner hereby unconditionally release, remise, waive, acquit and discharge the Lender, **Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Owner Trustee of the Aspen Growth IV Trust, a Delaware statutory trust,** and FCI Lender Services, Inc., as servicing agent, and every person known or unknown to the Lender, the Borrower, and the Owner, including their administrators, attorneys, agents, employees, officers, directors, contractors, consultants, and representatives, affiliates, predecessors, parents, and subsidiaries (collectively, the "Releasees") from all rights, claims, liabilities, costs, attorney's fees, obligations, accountings, injuries causes of action, contracts, agreements, or suits of any kind, nature or extent whatsoever, or repayment obligations, whether known or unknown, discovered or undiscovered, liquidated or contingent, relating to any transaction, event, circumstance, action, failure to act or occurrence of any sort type arising prior to the date of this Agreement that Borrower and/or Owner may have against the Releasees and every person known or unknown howsoever arising, related or unrelated to the Obligations from the beginning of time to the present, including claims of violations of the Truth-in-Lending Act, Fair Debt Collection Practices Act, Real Estate Settlement Practices Act, Equal Credit Opportunity Act, and all other claims, excepting only claims arising out of a breach of this Forbearance Agreement. The Parties, and each of them, intend and agree that the releases provided for herein constitute a full and final accord and satisfaction and release of and from all released Claims.

    (b) This Section shall survive the termination or expiration of this Agreement and shall be valid and enforceable at any time by those contemplated under this Section.

34. **Consideration:** In consideration of the promises set forth in this Agreement, Lender shall forbear from exercising its legal and equitable remedies until the Borrower and the Owner fail to comply with the foregoing terms and stay the foreclosure proceedings during the forbearance period; provided the Borrower and the Owner comply with all material terms and obligations hereunder; however, in the event of default, foreclosure proceedings will commence in accordance with the Loan Documents.

35. **Compromise.** This Agreement constitutes a compromise, settlement, and release of disputed claims and is entered into solely for the purpose of avoiding the burden, inconvenience, and expense of litigating those claims. No Party to this Agreement admits any liability to the other Party with respect to any such claim or any other matter. Each Party expressly denies that it has any liability as to every Claim, which may be asserted by the other Party. Therefore, this Agreement is not to be and shall never be construed or deemed an admission or concession by any of the Parties hereto

Page 10 of 14

Borrower Initial(s)                                                                                                   Lender Initial

of liability or culpability at any time for any purpose concerning any claim being compromised, settled, and released, or any other matter.

36. **No Waiver:** Neither this Agreement nor any statement by or on behalf of Lender as to the amount due and owing under the Note, the Security Instrument or the other Loan Documents shall constitute a waiver of any rights of Lender to collect any additional amounts to which Lender may be lawfully entitled pursuant to the terms of the Note, the Security Instrument, or the other Loan Documents or otherwise at law or in equity. The specific enumeration of defaults contained in this letter shall not constitute a waiver of any other defaults which may now or hereafter exist under the Note, the Security Instrument, or the other Loan Documents.

37. **Authorization:** Borrower and Owner authorize Lender, and Lender's successors and assigns, to share Borrower and Owner information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender, Borrower, and Owner in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, Owner or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower and/or Owner are obligated, or to any companies that perform support services to them in connection with Borrower's loan.

    Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

    By checking this box, Borrower also consents to being contacted by text messaging ☐

[SIGNATURES CONTINUED ON SUBSEQUENT PAGE]

Page **11** of **14**

Borrower Initial(s)     Lender Initial

# Exhibit A

## Legal Description

ALL that certain lot, parcel or tract of land, situate and lying in the City of Jersey City, County of Hudson, State of New Jersey, and being more particularly described as follows:

BEGINNING at a point on the southwesterly line of Clifton Place distant 30.00 feet northwesterly from the intersection formed by the northwesterly line of Clifton Place with the southwesterly line of Clifton Place and running; thence

(1) North 32 degrees 00 minutes West and along the southwesterly line of Clifton Place a distance of 30.00 feet to a point; thence

(2) South 58 degrees 00 minutes West a distance of 84.50 feet (94.50 feet per deed) to a point; thence

(3) South 32 degrees 00 minutes East and parallel to Clifton Place, a distance of 30.00 feet to a point; thence

(4) North 58 degrees 00 minutes East a distance of 84.50 feet to the point in the southwesterly line of Clifton Place, said point being the point or place of Beginning.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 22.A in Block 1914 on the City of Jersey City Tax Map.

Borrower Initial(s)

Lender Initial

IN WITNESS WHEREOF, the Parties, intending to be legally bound, have duly executed this Agreement on the date(s) set forth below.

_____
Jose Gosdenovich

State of New Jersey

COUNTY OF Middlesex

On this 5 day of July, 2021, before me, a Notary Public, the undersigned officer, personally appeared **Jose Gosdenovich**, known to me or satisfactorily proven to be the person whose name is subscribed to the foregoing and, who acknowledged that he executed the foregoing Instrument for the purposes therein contained and desired that the same might be recorded as such.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
Notary Public

SILVIA E. PEREYRA
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 8/3/2021

_____
Marisol Gosdenovich

State of New Jersey

COUNTY OF Middlesex

On this 5 day of July, 2021, before me, a Notary Public, the undersigned officer, personally appeared **Marisol Gosdenovich**, known to me or satisfactorily proven to be the person whose name is subscribed to the foregoing and, who acknowledged that he executed the foregoing Instrument for the purposes therein contained and desired that the same might be recorded as such.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____
Notary Public

SILVIA E. PEREYRA
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 8/3/2021

**Wilmington Savings Fund Society, FSB**, not in its individual capacity but solely as Owner Trustee of the Aspen Growth IV Trust, a Delaware statutory trust, By Aspen Properties Group, LLC, a Missouri limited liability company, its Administrator

_____
Charles John Briseno – Vice President, Servicing

State of Missouri

COUNTY OF Clay

On this 12 day of July, 2021, before me, a Notary Public, the undersigned officer, personally appeared **Charles John Briseno**, known to me or satisfactorily proven to be the person whose name is subscribed to the foregoing and, who acknowledged that he executed the foregoing Instrument for the purposes therein contained and desired that the same might be recorded as such.

**IN WITNESS WHEREOF**, I have hereunto set my hand and official seal.

_____
Notary Public

APRIL ELIZABETH NERICH
Notary Public, Notary Seal
State of Missouri
Clay County
Commission # 19496173
My Commission Expires 05-29-2023

Borrower Initial(s)   Page 14 of 14   Lender Initial